Your Honor, good morning. My name is William Courtney. I represent the plaintiffs in this matter, Russell Swiatek, George Bunley, and Marvin Barnett, and I'm reserving two minutes for rebuttal. All right. This case, as you can see by the audience, isn't as earth-shattering as the other one, but to my clients it is. They worked very hard at their employer, and they believed that they were discriminated against, and we tried a case over a matter of several days in the district court, and we got a jury verdict on Mr. Bunley's case, and that verdict was overturned. Can I ask you something about Mr. Barnett, though? Yes. There's this issue about whether, you know, I mean, the gentleman passed, and you sort of, as an aside, in one of your briefs said, yeah, but his son can step in, but aren't there steps that had to have been taken in order to make him officially a personal representative that there's not evidence in the record of? Your Honor, I believe that we did make the representations to the court, and there is evidence that he has made the application, and the papers that were given to him in the state of New Jersey were sufficient for him to act on behalf of the estate. Where is it, because I'm not disputing you might have done it, but yeah, they're telling us there's no evidence in the record that you took those steps. Where is it in the record before us that Mr. Barnett, Jr. took those steps so that we could properly recognize him as being in the case representing the estate? Other than what we filed with the court, I don't have anything. All right, well, maybe the opposition will tell us what's lacking, but it seemed like the submissions said we did enough, and the other side said, no, you had to do something extra. Yeah, I think that's what it was, Your Honor. I think the issue was, was the document that my, the son obtained, was that sufficient to enable him to have standing to bring this lawsuit, and we argued that it was. Yeah, well. They said that it's not. There has to be a document, so maybe I'm wrong, but I was under the impression that there was nothing in the record other than your representation, and that might be a problem as a legal matter. That's how I understood the point being made, but I might have misunderstood it. Well, we'll hear from your, the opposition. We may need some supplemental information. Thank you. Let me stick with Mr. Barnett. Well, if we're, since we're with Mr. Barnett, is the best evidence in the record, the statements by Maruca, I don't know how you pronounce it, is that how you pronounce it? Maruca, yes. Maruca, with regard to, you have to call a spade a spade? That was, yes, that was the racial epithet that was stated at work, not once, but on numerous occasions, basically in meetings. But it's always that phrase, right? Yes. Right? So isn't that, isn't that like at best ambiguous? Your Honor, yeah. Because, I mean, the phrase, you've got to call a spade a spade, is really just a statement of, let's be candid. As I stated to Judge Thompson below, it wasn't that it was just the phrase used. It was, when it was used, it was used only in meetings where Mr. Barnett was present, and when it was said, Maruca would point at him and say, a spade, a spade. I mean, it was not just the comment. It was the pointing, it was the emphasis on the word in meetings where Mr. Barnett was present. But for the purpose of what we're arguing here, whether or not it constituted racial, a hostile work environment or racial discrimination, is really not relevant. No, right. You've not raised that on appeal, have you? What's that? You've got two arguments. No, I haven't raised that on appeal. One is you should have been able to amend the complaint to conform, and the issue with the perceived disability, correct? Yes, I didn't raise that on appeal. All right. My, the issue on appeal with regard to Mr. Barnett is the fact that the jury came back with that question, and it was a question that couldn't have been more on point under New Jersey law against discrimination, and they asked, if we determine that Maruca made a racial comment, Barnett went to HR, and Maruca was mad that Barnett went to HR and fired him retaliation for going to HR about the racial comment, is it sufficient to fine for Plaintiff Barnett on Question 4? Well, the answer is technically on Question 4, no, because it was a hostile work environment claim, but that's why we moved at that point to amend. No, but I get it. That's why I brought up what I brought up, because there'd be no ability to argue now that you should have been able to amend on retaliation if there's, and this is arguably, I'm not positing this, if there's nothing to the racial comment. I mean, you'd agree, for instance, that if it was an innocuous phrase, I know you don't think it's innocuous, but I'm just positing, if it was an innocuous phrase, there'd be no ability to then argue once we heard this and we wanted to argue retaliation. In that instance, Judge Thompson would be correct to say, no, you can't. No, I disagree. I don't believe that whether or not at that point, when he goes to HR because he believed it was a racial comment, and then he was retaliated for raising the issue, whether it was ultimately true or not that it was racial, that would be unacceptable under the law against discrimination. Because he went and reported it. Because he reported it, and he was retaliated against. But these are facts that you had before the trial. You could have made a motion before trial. There was nothing new about the facts presented at trial. You had a eureka moment after the question. Well, our belief and the reason we... Well, I mean, that's got to be so, right? Well, eureka moment, it's the way that we describe it, but I don't think I would describe it that way. We believed, at the time taking this matter to court, that it was so...the issue of hostile work environment was...we had so much proof on this. We had testimony of what took place that if we couldn't prove the hostile work environment, it would be more difficult to prove the retaliation. However... So you made a choice. Well, we did at that time, Your Honor, but we didn't understand that the proofs were going to go in the way that they went in. But you always have that risk. If we allow people to conform to the evidence, you know, after the fact, they'll say, gee, the evidence came in and it really looks more like a tort than a contract. You know, but we didn't plead that. What authority do you have that would allow us to say that at that late stage of the game, you can basically replead? Basically, Your Honor, it's the fact that the issue and the testimony that went in about what occurred and what he did and what happened after he went in was...went in at trial. It was tried by consent and under the rule 15b-2. The fact that it was in, there was no objection to the testimony going in, that him going to... But that's why you take discovery, is just to figure out how something's going to go in. And even if it goes in differently from what you thought, that's kind of too bad. Can we turn to the other issue, which is the perceived disability? Yes, Your Honor. I mean, Judge Thompson clearly disagreed and felt, I guess felt that Maruca thought he was a malingerer, not perceived disabled. I myself thought that the jury instructions were pretty sparse on perceived disability. But that, you know, the jury calls him as they see him. But how is it that the jury could find perceived disability here? What was there to support that verdict? Your Honor, the whole presentation of this case, that these three individuals were the only individuals in...had Bemis in management that had taken FMLA leave. Exactly. But the jury found that there was no discrimination on that basis. I understand. But that...the proofs on that, the fact that that occurred, okay, can also be viewed by the jury as evidence for the perceived disability. Mr. Munley, as different than the other two individuals, the timing of his termination, when he returned, okay, was within two weeks after he returned on his third FMLA leave. Right. And the case law is clear that timing alone is sufficient to base a finding of perceived  And did the others have the...I mean, he had three illnesses. He had his leg problem, he had a head... So he clearly had lost a lot of work. He was not on the job doing his job because he had a whole host of injuries. But he always came back, Your Honor. He came back after he took permitted leave and he went back to work and he did his job. And he was doing his job and he came back... Okay, but now you're kind of arguing against what the jury found. The jury found that Maruca perceived him to be disabled. What evidence supported that? Maruca's actions against him and looking at Mr. Maruca's actions that were testified at length in trial about what he did to people who took time off and who he perceived were not working for the money that they were being paid, he retaliated against them. And exactly what he did when Mr. Munley came back, he was told he needed some accommodation. He wasn't going to give him that accommodation. The way he approached what Mr. Munley needed and took it away from him shows that he was retaliating against him because he perceived him to be disabled. I mean, when he told him that he couldn't park his car... Okay, go ahead. I was just going to say, please be specific. What do you point...what do you think exactly shows, oh, Maruca perceived Munley to be disabled? The fact that, you know, he told him, you know, I'm not going to consider a golf cart for you until we can travel a quarter of a mile each way to the parking lot back to where he was. Well, that would show he perceived him to not be disabled, that he was quite able to walk. That...I understand what they're arguing. But Mr. Maruca did things a certain way when somebody took time off from work for...in his opinion, was getting paid for nothing. And that's what... I mean, isn't your answer that he fired...isn't your answer that he perceived him to be disabled...and what showed that is the fact that he fired him. I'm building up to that. Oh, okay. Well, you better build because you got your sum-up light on. Yeah, and that's what ultimately it is. He fired him within two weeks of getting there. And I think when you look at this issue in its entirety, what he did with all the people at Bemis when they were injured, I mean, even to the extent of following people out on a stretcher saying, you know, sign these papers or you're not going to come back. Well, then you would think that they would find the FMLA discrimination and they didn't do that. And that shows maybe he's a mean, no good guy. But does it show that he perceived the man was disabled? I mean, I would have thought that you would have said, he told him he could park next to the shop so he wouldn't have to walk. Or he said something like, oh, you'll get used to it, you know, like you've got this thing. I'm surprised to hear you say things that seem to cut against it. Isn't there anything that you like in the record that shows he perceived disability? I believe that Mr. Maruca testified that he did let him park there. That is what Mr. Maruca said. I mean, he did testify to that. And maybe the jury believed him on that one instance. I don't know. But there he is. And if he did, that's enough to reinstate that jury award. And the timing's enough. And the fact that he farted was enough. All right. We'll hear from you on rebuttal. Good morning. David Garland on behalf of the Bemis Company. What's the definition of disability? I'm glad you asked, Your Honor. Because it wasn't in the jury instructions. It has delivered. You're absolutely right. It was not. And as you know from other cases you've written, including Fayella, where you've quoted the definition of disability. Well, what is it? Let's hear it. Well, I can read the whole definition if you'd like. But what I think is important is part of the definition. And that is a disability is a physical disability. And I'm focusing on that here because we're not talking about a mental disability. We're talking physical. It's a physical disability caused by bodily injury which prevents the normal exercise of any bodily functions. I think that's the portion of the definition that matters here. Well, and why couldn't the jury find that Maruca, who, to value his testimony, he was the greatest supervisor, you know, he just niced everybody and never retaliated on FMLA and he didn't do all the things to the guy on the stretcher that everybody else said he did. But anyway, that he looked at Mr. Swiatek or Mr. Munley and said, I need a warehouse guy or I need an extruder. I need somebody who's going to be here and do the job. I don't need somebody who I need to get somebody else to do their work for them. This guy has had too many injuries. He's not able, not capable of doing the job. He's disabled. He's perceived as being disabled. Why couldn't the jury rationally find that? Because the evidence in the record was not there to support it. When you were questioning appellant's counsel, you mentioned that Munley was out quite a bit. In fact, that's not, Your Honor, what's in the record. What's in the record is that he was out for a very short time in 2004, 2005 on an FMLA leave. The head injury, he was out a very, very short time. He did not take any leave with respect to the head injury. And the only other time that he was out. He did the top part to get around the plant. Well, but again, when we actually look what was the evidence in the record, let's look at what was said. Let me finish too if I may. The last time he was out was for about a month. And what's in the record with respect to the injury? What's actually in the record? What In 2007, he testified. All he said about it was that he had inflammation in his knee. Okay. Well, that is something the jury heard. But the jury also heard that Mr. Maruca said, I'm going to think about your request for the golf cart. I'm going to consider it. The jury heard Mr. Maruca himself testify. I told the man he could park right by the shop so that he wouldn't have to walk. The jury heard Mr. Maruca had made some offhanded comment about you're going to get used to it. Kind of buck up. In other words, you may have a problem, but you've got to learn to live with it. That's something they heard and they could draw some conclusions about. They heard him suggest that he could use his staff to shuttle things back and forth on the forklift so that he wouldn't have to walk. If the jury hears these things, a collection of these things, isn't that enough for a rational jury to say, well, you know what? I think Maruca believed he had an issue. And therefore, we're going to fine for him. What's irrational about a jury who's heard those things coming to the conclusion that there was a perceived disability? Because we go back to the definition and we go back to a... They didn't have... They didn't have the definition. They were given a jury instruction and everybody has the... Nobody objects to the jury instruction. Nobody said, Your Honor, we want you to detail what perceived means and detail what disabled means. You can't argue after the fact that they went off the reservation if they weren't told they had to stay on there. Actually, Your Honor, our proposed jury instruction included the complete definition, but obviously that's not an issue that we're raising here because the jury found, or the judge granted our motion, so we didn't raise that issue. But I will tell you below, our proposed jury instruction did, in fact, include the whole definition. But there are cases, including cases in this court, the Kelly versus Drexel University case, where the court has said merely because an employer provides an accommodation doesn't rise to the level of showing that the employer... Merely, but there's more than merely here. I've just named for you four pieces of evidence, and they are not... And it's not just merely providing an accommodation. There are statements made. Why isn't that enough? It's a... You concede, I assume, that it's a pretty low bar. It only has to be rational, right? So your defending this requires you, I think, to point out to us what's irrational about a jury who heard those four things, there may be others, but those are the four I put before you, saying, I think Mr. Maruca thought there was a disability there. The threshold... It's a two-step process. First is, on the prima facie case, was there evidence in the record to show a perception of disability on the part of Maruca? I think Judge Thompson was quite right when she analyzed the evidence that you've just articulated, that that didn't show on Maruca's part that he thought that Munley was disabled. But even for the sake of argument, that you accepted that a prima facie case was made out, that he still has to show, Munley still had to show, that the determinative factor in his termination was the perceived disability. And isn't pretext classically a question of fact for the jury? And the jury found against you, so that the judge had no business walking in and turning it around. Just because a case, a plaintiff can make out a prima facie case, that doesn't mean, as the court knows, that the case automatically goes to the jury. But it did. Can you tell us... It did, and they won. That's the irrational point. You're saying there's only one way to look at evidence. If there's more than one way, then it's not irrational. But what is irrational about it? What is irrational is that there was nothing... The company's legitimate business reason for acting here was unchallenged. Your Honors, in the appendix, there is the organization charts. We saw them, and he's going to be moved down to an extruder, and he's the fourth person... Well, that's right. And part of that, Your Honor, part of that, what you just pointed out, moved down to the extruder, that was a physically more demanding position. Nobody's suggesting you didn't have a counter-argument. That's not the point. You had plenty of evidence on the other side, and you persuaded the jury on virtually everything. You won, and won, and won. So it's not like this was some jury who wasn't thinking. They just started checking the box for one side or the other. You won almost everything. But on this point, evidently, they believed the other side's evidence more than they believed yours. So the fact that you've got another side doesn't dispose of this appeal. You've got to show that they were loopy to believe the other side, and that's what we're trying to draw you out on. What do you got? And the difference in the testimony from one side or the other about Maruka's actions was striking. Maruka's testimony about what happened in situations versus the plaintiff's side. So a lot of this could have just relied upon credibility. I mean, you're saying they had reasons. The jury may not have believed the reasons. The jury believed the reasons on nine of the ten claims that went to the jury. So, yes, we too ask ourselves, how is it on this tenth claim the jury could find in Munley's favor? And I come up with two possibilities. One is, one piece of evidence that we objected to, the Komoroski testimony, which showed that Komoroski may have perceived Munley as disabled, was admitted by the court over our objection. The jury heard that. But Komoroski had no input whatsoever, whatsoever, into the decision-making process. Munley, Maruka didn't consult with anybody in the plant about that. Irrational is there's no evidence going the other way. That's one example of irrational, right? What you've just mentioned is not an example of irrational. Help us with this notion of irrational. There is no evidence going the other way on the decision. And that is, as of October 16th, or excuse me, October 10th, there were three people selected for the rift by Maruka. Munley was not one of them. Only when he was, when Maruka was told that you've got to go to a fourth, at that point Maruka went back to the organization charts, scenario three, which kept Munley in, kept Munley in as the extrusion supervisor. And at that point he said, how do I run the plant with the remaining people, given how deeply the cuts have been?  And he explained that. And he says, this guy, you know, was just out for a month. I don't think he can do the job. What's the next injury he's going to have? I can't do that. He perceived him to be disabled, i.e., not able to do the work. Again, I don't think any rational fact finder can conclude that, Your Honor, because at the same time he's doing this, Barnett, who has eye issues, is out on FMLA. Barnett hasn't even returned yet. But Barnett has been selected for the rift. Does it start to sound to you like you're weighing evidence? Because that's what it sounds like a little bit to me, that you're saying, if you look at this piece of evidence, you look at that piece of evidence, you weigh these things, then you should come out this way. But that's not our job. That's not Judge Thompson's job, to find a judge as she is. The question is, in the face, and I'm confident there's other evidence that your opposing counsel might point to, but we've laid some on the table. What would be wrong with the jury seizing on those pieces of evidence, including Mr. Maruca's own testimony about, you know, I had him parked by the door. What's wrong with that? Because, first of all, and I may be repeating myself, in the cases in Taylor and this court, it doesn't rise to the level of perception. What the court has said has been, if we took that approach, and there's also an appellate division case in New Jersey, Heisman v. Monmouth County, where the court in the appellate division said, if we take that approach, then we'll discourage employers from providing good working conditions. Sure. If it were only a matter, if it were solely a matter of making an accommodation here or there, there might be an issue. But we have a little bit more than that, right? I mean, wouldn't you agree that the comment, you'll get used to it, is at least open to interpretation? I mean, a jury could interpret, you'll get used to it, to mean either you'll get over your injury or you've got a disability, but you'll get used to that. Even if that were so, it doesn't address the reason advocated, and it doesn't address the pretext issue. There was no evidence. You're making an argument. Plaintiffs' counsel make arguments. You don't see that as a perception? But it's a two-step. It's a two-step. One was, did Maruka perceive Munley as disabled? If you answer that question yes, then the next step is, was that perception the determinative factor in the district? And when you look at the evidence as to what the company put forward, there was nothing to discredit that. That's the point I'm trying to make. Except if there's a lack of credibility of Maruka and the jury didn't believe that evidence, then they didn't buy that reasoning. Judge Thompson said that she thought he was joking. The juries could have perceived that he wasn't joking, and, therefore, that's the basis for them to have come to the decision that they came to. And, of course, we don't know the basis, and one of the bases could have been the Komorosky comment that we objected to. It could have been, but that's what juries do. There you go. Can I ask you about Mr. Barnett and the personal representative thing? Yes. Because I've got a little bit of – I'm a little worried here. On the one hand, we might agree with you and say, well, even on the merits, you lose. But could we even go there if we wanted to if the reality is that there's no case because there's no plaintiff? In other words, do we have a Article III case in controversy problem if there's nobody properly in the case so that we can't look past that problem and say you lose on the merits? Your Honor, at the moment there is no case because what's happened is that Barnett made a motion to have his son substituted that was denied without prejudice. A second motion that was – Well, what did he fail – what are you saying he failed to do as a matter of law in order to have his son be substituted? All he's acquired is being – this affidavit of next of kin, which only gives you rights to deal with matters of less than $10,000. Okay. So what did he have to do that he didn't do? I've laid it out in – I thought – Well, if you tell me because I forget. I quite frankly looked at that motion and thought a little bit of a give me a break. I mean, what is he – what hoop does he have to jump through at this point? Is it clear? Your Honor, I'm sorry. I can't lay it out verbatim right now. We did it in the paper. But even if it was before the court, I mean, it was – Judge Thompson was absolutely right to deny that motion that was prompted by what you call the Eureka moment. And we would have approached the case – Different issue, different question. I'm trying to focus you on one very specific thing because even though one might or might not agree with you on the merits of Mr. Barnett's case, before you consider the merits of Mr. Barnett's case, somebody's got to be in the courtroom representing Mr. Barnett's case. You've taken the position that there's no one in the courtroom to represent him. That raises, for me at least, a justiciability problem that I really, really need you to help me with. So I'm asking you, what is it that's not in the record that you say has to be in the record in order for him, Mr. Barnett Jr., to properly be a representative? Because if you're right, that's kind of a big deal. I understand, Your Honor, and I can't help you more at this point than beyond what we put in our paper opposing the motion. And frankly, I thought that the court – I didn't understand whether the court would address the motion before we got here or not. I forgot to pull that myself. Okay. We may need something supplemental. We'll see. Yeah. It really – I think it would be a good thing to have 28 J letters that laid out, you know, here's the law. Do we have Barnett before us or not, and why? And there's no, you know, there is this in the record, and that's sufficient as a matter of law under New Jersey to be a personal representative and under the Federal Rules of Procedure, or it's not. I think the best way, if you would file a letter along those lines within a week, and then within a week opposing counsel can file and say, no, we did everything we have to do, or maybe acknowledge that what wasn't done is, you know, is going to be done forthwith. It seemed to me like you were talking at cross purposes, that you said you filed X and you said you need to have ABC. And somebody's right, somebody's wrong. There's obviously a law that controls that says what has to happen. All right. So if you would do that within a week. Yes, Your Honor. And then another week, counsel. All right. Thank you. Okay. Thank you. Rebuttal? Okay. That's fine. Thank you very much, counsel. We appreciate it. We'll take the matter under advisement. Thank you.